BORNGESSER v. WINFREE.

1. Appeal and Error—De Novo Review—Credibility—Evidence.
   Supreme Court, on *de novo* review on record of chancery case, gives consideration to fact that trial judge had opportunity to observe parties during course of trial, particularly while they were testifying and was, therefore, in a better position to pass on their credibility, hence, may not properly reverse his decision unless convinced that, on the proofs submitted, an opposite conclusion should have been reached, and that in consequence the decree entered is not in accordance with the just rights of the parties.

2. Deeds—Fiduciaries—Quitclaim Deeds.
   Defendant daughter and her husband had a duty to see that her parents, the plaintiffs, were properly protected and were correctly informed as to the nature and purpose of quitclaim deed executed by plaintiffs under circumstances indicating that it was for the purpose of avoiding probate proceedings in the future with reference to the property upon which defendants had made down payment but plaintiffs who had had very limited experience in property transactions had made monthly payments and occupied it as a home.

3. Same—Fraud—Evidence.
   Finding of trial judge that deception was practiced upon plaintiffs, parents of defendant wife, by defendants' procurement of quitclaim deed from plaintiffs of their interest in property which had been deeded to plaintiffs and defendants subject to Federal Housing Administration mortgage upon more favorable terms than if defendants had purchased the property by themselves and that the just rights of the parties required that it be set aside, *held*, supported by proofs.

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error, §§ 815–817.
[2, 3] 16 Am Jur, Deeds, §§ 30, 31, 40.
[2, 3] Fraud or undue influence in conveyance from child to parent. 11 ALR 735.

Appeal from Wayne; Jayne (Ira W.), J.   Submitted January 10, 1951.   (Docket No. 13, Calendar No. 44,313.)   Decided March 1, 1951.

Bill by Bert Borngesser and wife against Gus B. Winfree and wife to establish a life estate in certain real estate.   Decree granting plaintiffs an undivided one-half interest.   Defendants appeal.   Affirmed

*William A. Freimuth* (*Fred F. Wynn,* of counsel), for plaintiffs.

*Douglass K. Fischer* (*Douglas W. Booth,* of counsel), for defendants.

CARR, J.   This is a suit for equitable relief.   The plaintiffs are the parents of defendant Juanita R. Winfree.   They alleged in their bill of complaint that in August, 1941, their son, Bert Borngesser, Jr., a resident of Massachusetts, proposed purchasing a home for them in order that they might have a permanent place in which to live.   At that time the house that they had been renting was offered for sale, and it became necessary for them to rent a flat.   Subsequently they discussed the matter with the defendants, and it was agreed that the latter would assist them rather than the son.

The parties found property that was satisfactory, and negotiations were instituted for its purchase. A down payment of $800 was required, and defendants wished to borrow the balance of $5,200 from a bank on a mortgage executed under the Federal Housing Administration plan.   Apparently some doubt arose as to whether defendants could comply with the requirements of such plan, and it was agreed that plaintiffs should join them as purchasers and execute the necessary mortgage and note as co-own-

ers. This plan was carried out and a deed of the property was taken designating plaintiffs, as husband and wife, and defendants, in like manner, as the grantees. The required note and mortgage in the sum of $5,200 were executed by the parties. It is conceded that defendants made the down payment, and from month to month plaintiffs turned over to defendants sums equal to the monthly payments on the note, which amounts the record indicates were paid by defendants to the mortgagee. Plaintiffs went into possession of the property, and made expenditures for its improvement, in addition to their own labor, in an amount exceeding $500.

Approximately a month after the conveyance of the property to plaintiffs and defendants, the latter sought and obtained from plaintiffs a quitclaim deed of all interest that the plaintiffs had in and to the property, which deed was recorded 3 months later. The testimony is conflicting as to the reasons for the execution of the conveyance. In their bill of complaint plaintiffs alleged that they did not know at the time that they were signing a deed, that they did not read it, and that it was not read or explained to them. They further alleged, and testified on the trial, that defendants procured them to sign a paper, the nature of which they did not know, by representing that it was necessary to obviate future probate proceedings with reference to the property. It is a fair inference from the testimony of plaintiffs that they were willing that defendants should be sole owners of the property after plaintiffs, or the survivor of them, occupied it as a home for the balance of their lives. Defendants asserted in their answer, and testified in substance, that it was agreed prior to the time that the property was deeded to the parties that plaintiffs should execute a conveyance of their interest, that the purchase was made in reliance on such understanding, and that the quitclaim deed was

executed for the purpose of carrying out the agreement. On the trial of the case plaintiffs denied that any such agreement was made.

The relations between the parties continued on a friendly basis until 1946, plaintiffs occupying the property as their home and making, as they claimed, the monthly payments on the mortgage note. In October, 1946, defendants for the first time undertook to register with the Federal Office of Price Administration, as rental property, the home occupied by the plaintiffs. Thereupon plaintiffs asserted that they were not tenants, but were the owners of an interest in the property. Because of the dispute between the parties the registration was not effected. Defendants then served notices on the plaintiffs to terminate tenancy and to vacate the property for nonpayment of rent, and thereafter instituted an ejectment proceeding in the circuit court of Wayne county. The instant suit in equity was then brought by plaintiffs, and apparently the prosecution of the law action has been held in abeyance. In their pleading plaintiffs asked that they be decreed to be the owners of a life estate in the property, and that defendants be required to execute a proper conveyance to evidence such interest. Plaintiffs also requested "such other and further relief in the premises as to this court shall seem just and equitable." Defendants by their answer denied the material averments of the bill of complaint. They also filed a cross bill seeking a decree for damages on the ground that plaintiffs, by asserting an interest in the property, had prevented defendants from selling it at a substantial profit.

The trial court came to the conclusion, after listening to the proofs of the parties, that plaintiffs were not entitled to a decree in accordance with the specific prayer for relief, but that the quitclaim deed was procured by fraud and deceit and should be set

aside, and that the cross bill should be dismissed. A decree was entered accordingly, and defendants have appealed. It is their claim, in substance, that the findings of fact by the trial judge are not supported by the record, and that a decree should be entered in this Court dismissing the plaintiffs' bill of complaint.

As before noted, the testimony of the parties, with reference to the execution of the quitclaim deed, was sharply in dispute. Plaintiff Bert Borngesser testified in part as follows:

"Mrs. Winfree said that she wanted us to go over to the real estate office some evening and sign papers at Mr. Klei's office. I told her it was all right at any time. She said she would let us know when to go. She did not say at that time what the papers were for. At the office Mr. Klei got a paper out of file and showed me and my wife where to sign, and we signed it, and left it lying on the desk. We stood and talked a little about the place before we left. There at the house, first time Mrs. Winfree brought it up she said we want you to go ahead and sign these papers so that we won't have to have trouble if anything happens to you and mother. She said she would have to have these papers signed in case anything happened to me and mother. She wouldn't have to go and have this probated so other children couldn't come in and put a [claim] against it. That was her reason for having us go and sign papers. Nothing was said about signing a quitclaim deed. We said it was all right with us. * * * I didn't read the paper. I don't think Mrs. Borngesser read it. Nobody read it to us in the real estate office. Nobody explained it to us. I did not know it was a quitclaim deed. Nothing was said about recording it. I didn't know it had to be recorded. I thought it would be kept in case anything would come up, if anything happened to us."

The other plaintiff gave testimony of similar character. Defendants denied misrepresentations on

their part as to the purpose for which the quitclaim deed was sought, stating in effect that it was executed pursuant to an agreement made between the parties prior to the conveyance to them. It was their claim on the trial, and is on this appeal, that plaintiffs were not entitled to any interest in the property, and that they were merely rent-paying tenants from month to month. They have made no claim that they took any action to relieve plaintiffs from possible liability on the note and mortgage executed by the parties, nor do they offer any explanation of their failure to do so.

The trial court found that the facts with reference to the execution of the quitclaim deed were substantially as claimed by plaintiffs. While this Court hears the case *de novo* on the record, we give consideration to the fact that the trial judge had the opportunity to observe the parties during the course of the trial and particularly while they were testifying. He was, in consequence, in better position to pass on their credibility than is this Court. We may not properly reverse his decision unless convinced that, on the proofs submitted, an opposite conclusion should have been reached, and that in consequence the decree entered is not in accordance with the just rights of the parties. *Wright* v. *Brown,* 317 Mich 561; *Pence* v. *Wessels,* 320 Mich 195; *Ruch* v. *First National Bank of Three Rivers,* 326 Mich 52.

It is apparent from the record in the case that the plaintiffs had implicit confidence in defendants. They relied on them for assistance and advice. The property was acquired primarily in order that the plaintiffs might have a home. Defendants voluntarily assumed the obligation of helping to achieve the desired end, thereby recognizing that plaintiffs needed aid and counsel. Plaintiff Bert Borngesser testified that he had never owned any real estate other than a cemetery lot. For a period of 32 years pre-

ceding the trial he was a yard foreman in the employ of a railroad company. It is a fair conclusion from the record that the knowledge of both plaintiffs with reference to real property transactions, and business matters generally, was limited. Under the circumstances, and in view of the relationship between the parties, we think that a duty rested on defendants to see that plaintiffs' rights were properly protected and that they were correctly informed as to the nature and purpose of the conveyance in question. *Gill* v. *Dingfelder*, 224 Mich 247; *Timm* v. *Parker*, 316 Mich 269.

. The failure to take steps to have plaintiffs released from possible liability on the note and mortgage is significant. It is also of interest that defendants, if their version of what occurred is correct, procured the joining of plaintiffs as grantees in the deed of the property to the parties solely to enable them to obtain the necessary loan under the Federal Housing Administration plan. If, as they claim, it was agreed in advance that plaintiffs should retain no interest in the property, deception was practiced to bring about the securing of a loan under more favorable terms than otherwise could have been obtained.

On the record in the case we cannot say that the findings of the trial court were not fully and adequately supported by the proofs, or that they were not in accord with the just rights of the parties. The decree is affirmed, with costs to plaintiffs.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.